# FEDERAL NATIONAL MORTGAGE V. MCDERMOTT

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**FEDERAL NATIONAL MORTGAGE ASSOCIATION (FANNIE MAE),**
**Plaintiff-Appellant/Cross-Appellee,**
**v.**
**TRACY MCDERMOTT AND LA BUENA VIDA CONDOMINIUMS UNIT OWNERS'**
**ASSOCIATION,**
**Defendants-Appellees/Cross-Appellants.**

Docket No. A-1-CA-35974
COURT OF APPEALS OF NEW MEXICO
May 21, 2019

APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY, Jeff F. McElroy, District Judge

## COUNSEL

Rodey, Dickason, Sloan, Akin & Robb, P.A., Jocelyn Drennan, Edward Ricco, Charles J. Vigil, Albuquerque, NM for Appellant

Armstrong & Armstrong, P.C., Julia Lacy Armstrong, Taos, NM for Appellee Tracey McDermott

Walcott, Henry & Winston P.C., Donald A. Walcott, Rachel L. Winston, Santa Fe, NM for Appellee La Buena Vida Condominium Owners' Association.

## JUDGES

J. MILES HANISEE, Judge. WE CONCUR: JENNIFER L. ATTREP, Judge, MEGAN P. DUFFY, Judge

**AUTHOR:** J. MILES HANISEE

## MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}** The question we answer in this case is whether the district court abused its discretion in granting Plaintiff Fannie Mae's predecessor-in-interest JPMorgan Chase Bank (JPMorgan) an extension to file its notice of appeal under Rule 12-201(E)(3) NMRA.[1] Concluding that it did, we reverse the district court's order granting the extension and dismiss Fannie Mae's appeal as untimely.

**BACKGROUND**

**{2}** JPMorgan filed a complaint for foreclosure against Defendants Tracey McDermott and La Buena Vida Condominium Unit Owners' Association in October 2012. In May 2016 the district court granted Defendants' joint motion to dismiss the foreclosure action with prejudice under Rule 1-041(E)(1) NMRA, as JPMorgan had taken no action in the case for more than two years and based on its finding that JPMorgan's inaction "was inappropriate, unnecessary[,] and intentional." JPMorgan moved for reconsideration of the dismissal, which the district court denied on August 31, 2016. JPMorgan did not file a notice of appeal prior to the September 30, 2016, deadline for filing such notice. *See* Rule 12-201(A)(1)(b) ("A notice of appeal shall be filed . . . within thirty (30) days after the judgment or order appealed from is filed in the district court clerk's office.").

**{3}** On October 7, 2016, a full week after the deadline, JPMorgan filed a notice of appeal and a motion asking the district court to consider its notice timely filed under Rule 12-201(E)(3)[2] (providing that a motion for an extension of time filed within thirty days after the original deadline for filing the notice of appeal "may be granted on a showing of excusable neglect or circumstances beyond the control of the appellant"). JPMorgan asked the district court to find that there was "excusable neglect associated with the ability to file a timely notice as [JPMorgan's] counsel was unable to obtain direction from its client and the investor on the mortgage loan, Fannie Mae, before the . . . September 30, 2016, deadline." Specifically, JPMorgan represented that its failure to timely file its notice of appeal was due to excusable neglect based on misunderstandings and miscommunication between [JPMorgan]'s counsel and [JPMorgan] regarding the August 31, 2016 [o]rder being a final appealable order, the effect of the [o]rder, and who would be responsible for prosecuting any appeal. There were also discussions related to possible settlement options and the settlement history in the matter. The appeal deadline of September 30, 2016[,] was on a Friday and the

---

1By order of this Court, Fannie Mae was substituted as the plaintiff-appellant in JPMorgan's appeal of the district court's order dismissing its foreclosure action. Fannie Mae also was substituted as the plaintiff-appellee in Defendant McDermott's and Defendant La Buena Vida Condominiums Unit Owners' Association's respective appeals of the district court's order granting JPMorgan an extension to file a notice of appeal, which we consolidated with Fannie Mae's appeal.

2We note that the parties incorrectly cited Rule 12-201(E)(2) rather than (E)(3) in their arguments to the district court, despite that Subsection (E)(2) had been renumbered (E)(3) in the 2013 amendments to Rule 12-201. The district court's statements at the hearing on JPMorgan's motion indicate that it understood JPMorgan's motion to be brought pursuant to Subsection (E)(3) and that it applied the standard of "excusable neglect or circumstances beyond the control of the appellant" rather than current Subsection (E)(2)'s "good cause" standard. See Rule 12-201(E)(2) (providing that "[i]f the motion [for extension of time] is filed before the expiration of the time otherwise prescribed by this rule for filing the notice of appeal, the motion may be granted on a showing of good cause").

parties were all located in different areas of the country, with the management of each party not available. There was miscommunication as to who was responsible for making the decision related to the appeal. It was not until several days past the appeal deadline that the clear direction was received from all parties in a management position about the need to appeal the [o]rder denying the [m]otion to [r]econsider the [d]ismissal with [p]rejudice.

**{4}**     JPMorgan argued that the district court should apply the four-factor balancing test set forth in *Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership* (*Pioneer*), 507 U.S. 380 (1993), to evaluate its claim of excusable neglect. *See Kinder Morgan CO$_2$ Co. v. State Taxation & Revenue Dep't* (*Kinder Morgan*), 2009-NMCA-019, 145 N.M. 579, 203 P.3d 110 (adopting the *Pioneer* factors to determine whether excusable neglect existed for purposes of granting relief under Rule 1-060(B)(1) NMRA). Defendants responded that New Mexico has employed a stricter standard for determining "excusable neglect" under Rule 12-201(E)(3) through precedent specifically addressing that rule. *See Guess v. Gulf Ins. Co.*, 1980-NMSC-040, 94 N.M. 139, 607 P.2d 1157; *Capco Acquisub, Inc. v. Greka Energy Corp.* (*Capco*), 2007-NMCA-011, 140 N.M. 920, 149 P.3d 1017. The district court expressed its opinion that Rule 12-201(E) itself "gives . . . pretty clear guidance, even without a lot of consideration of the case law." It found "just on the face" of Rule 12-201(E)(3) that "excusable neglect is present and that the appeal should be considered timely filed." The district court then explained that if it were to consider and apply the *Pioneer* factors, it would reach the same conclusion. Defendants appeal the district court's order granting JPMorgan an extension to file its notice of appeal.

## DISCUSSION

**{5}**     Defendants argue that the district court erred by applying an incorrect standard for determining whether "excusable neglect" existed under Rule 12-201(E)(3), and contend that no excusable neglect existed under the facts of this case to warrant an extension of time for JPMorgan to file its notice of appeal. We agree.

## I.     Standard of Review

**{6}**     We review a district court's ruling on a motion for an extension of time to file a notice of appeal for abuse of discretion. *Capco*, 2007-NMCA-011, ¶ 25. "[T]he trial court abuses discretion when it applies an incorrect standard, incorrect substantive law, or its discretionary decision is premised on a misapprehension of the law." *Aragon v. Brown*, 2003-NMCA–126, ¶ 9, 134 N.M. 459, 78 P.3d 913. Further, "[a]n abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 11, 314 P.3d 688 (internal quotation marks and citation omitted). "[E]ven when we review for an abuse of discretion, our review of the application of the law to the facts is conducted de novo. Accordingly, we may characterize as an abuse of discretion a discretionary decision that is premised on a misapprehension of the law." *Harrison v. Bd. of Regents of the Univ. of N.M.*, 2013-NMCA-105, ¶ 14, 311 P.3d 1236 (internal

quotation marks and citations omitted). We review a district court's interpretation of a procedural rule de novo. *See Becenti v. Becenti*, 2004-NMCA-091, ¶ 6, 136 N.M. 124, 94 P.3d 867 (explaining that "when called upon to apply and interpret rules of civil procedure, we review these questions de novo").

## II. The District Court Failed to Apply the Correct Standard for Determining Whether Excusable Neglect Existed to Extend the Time for Filing a Notice of Appeal Under Rule 12-201(E)(3)

{7}     Under Rule 12-201, if a party fails to file its notice of appeal prior to the expiration of the time prescribed for perfecting an appeal as of right, it may move the district court for an extension of time to file the notice of appeal. Rule 12-201(E)(3). A motion for an extension of time under Rule 12-201(E)(3) "may be granted on a showing of excusable neglect or circumstances beyond the control of the appellant." *Id.* (addressing motions for extensions filed within thirty days after the expiration of the appeal deadline). Here, JPMorgan claimed that its failure to timely file a notice of appeal was due to excusable neglect, not to any circumstance beyond its control. We therefore only address whether the district court abused its discretion in finding that JPMorgan's inaction was due to excusable neglect and in granting the motion. *See Capco*, 2007-NMCA-011, ¶ 26 (noting that the appellants in that case claimed only "excusable neglect" and not "circumstances beyond their control" as a basis for seeking an extension, and proceeding to "only address whether the [appellants'] inaction was due to excusable neglect").

## A.     The "Excusable Neglect" Standard Under Rule 12-201(E)(3)

{8}     Decades ago, our Supreme Court declared that the rule for granting an extension of time to file a notice of appeal is to be "strictly construed so as to prevent the progressive erosion of the rule to the point that attorneys will assume that they have sixty days within which to file notices of appeal." *Guess*, 1980-NMSC-040, ¶ 17. More recently, this Court reiterated that our Supreme Court "has prescribed a firm approach to claims of excusable neglect." *Capco*, 2007-NMCA-011, ¶ 27. In doing so, we specifically contrasted the "firm approach to claims of excusable neglect" made under Rule 12-201(E) with the "liberal standard" for determining the existence of excusable neglect in motions made under Rule 1-060(B)(1). *Capco*, 2007-NMCA-011, ¶ 27 (comparing *Guess*, 1980-NMSC-040, with *Sunwest Bank of Albuquerque v. Roderiguez*, 1989-NMSC-011, ¶ 6, 108 N.M. 211, 770 P.2d 533 (explaining that courts are to be "liberal in determining the existence of grounds that satisfy" Rule 1-060(B)(1)'s "excusable neglect" standard)). We also reiterated that " '[m]ere failure to receive notice alone, work overload of attorneys, palpable error of counsel and other causes that do not rise to the level of 'unique' circumstances that cannot be anticipated or controlled by a party's counsel are not sufficient.' " *Capco*, 2007-NMCA-011, ¶ 27 (quoting *Guess*, 1980-NMSC-040, ¶ 17). Finally, we explained that "[w]hether an appellant's conduct amounts to excusable neglect will depend on the facts and circumstances of each case." *Capco*, 2007-NMCA-011, ¶ 27.

**{9}** In *Capco*, we held that a party's failure to timely file a notice of appeal due to a claimed "miscommunication" with the party's trial counsel does not constitute excusable neglect where the party "had plenty of time and several opportunities to correct any miscommunication" and also "failed to provide the district court with any details regarding the alleged 'miscommunication' with trial counsel[.]" *Capco*, 2007-NMCA-011, ¶¶ 30, 33. The appellants in *Capco*—subsidiary companies of a co-defendant parent corporation—moved for an extension of time to file their notice of appeal after the original deadline for filing the notice had passed. *Id.* ¶ 4. They contended that their failure to timely file their notice of appeal "was a result of a miscommunication with their attorneys." *Id.* ¶ 5. Specifically, the appellants based their claim of excusable neglect on an apparent miscommunication between the attorney who served as general counsel for both the appellants and the parent corporation and trial counsel. *Id.* General counsel believed that trial counsel would file the notice of appeal on behalf of both the parent corporation and the appellants and did not learn until after trial counsel filed the notice of appeal that it was filed on behalf of the parent corporation only. *Id.* At the time general counsel became aware of that fact, however, there was still time—at least two weeks—for the appellants to file their own notice of appeal. *Id.* ¶ 31. The appellants attributed their further delay in filing a notice of appeal—and their failure to file a notice prior to the end of the permissive period for doing so—to "the time required to retain a new firm to handle their motion for an extension and to bring that firm up to speed on the facts and circumstances of the underlying case." *Id.* ¶ 32. Noting the "history" of the appellants' "complete indifference to the judicial process throughout the litigation[,]" the district court denied the appellants' motion for an extension. *Id.* ¶ 7 (internal quotation marks omitted).

**{10}** This Court affirmed the district court's denial of the motion. *See id.* ¶ 35. In doing so, we noted that the record showed that the appellants "had plenty of time and several opportunities to correct any miscommunication they had with their trial counsel" and "never offered any details as to why [any purported] error went uncorrected." *Id.* ¶ 30. We also expressly rejected the appellants' attempt to excuse their failure to timely file a notice of appeal by attributing the delay in filing to their need to retain substitute counsel. *See id.* ¶ 32. We acknowledged that "a substitution of counsel may incur some delay" but observed that the appellants "could have directed their outgoing counsel to file the motion for an extension under the [more liberal] good cause standard of Rule 12-201(E)(1) before the deadline to file a notice of appeal expired." *Id.* ¶¶ 25, 32. We concluded that under the facts of that case, the appellants had "failed to act diligently[,]" and that all of the reasons offered to explain their failure to timely file their notice of appeal failed to "present a compelling case to support a finding of excusable neglect." *Id.* ¶¶ 32, 34.

**{11}** JPMorgan made no effort in the district court to distinguish *Guess* or *Capco*, either factually or legally, nor does Fannie Mae on appeal. In the district court, JPMorgan argued that the district court should apply *Kinder Morgan*'s approach to determining the existence of excusable neglect, even though *Kinder Morgan*'s holding was limited to cases arising under Rule 1-060(B)(1). *See Kinder Morgan*, 2009-NMCA-019, ¶¶ 9-13 (noting repeatedly that the issue the Court was addressing was the

definition of "excusable neglect" as used in Rule 1-060(B)(1) and ultimately adopting the *Pioneer* test "as the standard for relief *under Rule 1-060(B)(1)*" (emphasis added)). Indeed, JPMorgan faulted Defendants for failing to "address the four factors relevant to the 'excusable neglect' analysis under *Kinder Morgan*[.]" But it was JPMorgan, not Defendants, who failed to address the applicable standard for determining excusable neglect under Rule 12-201(E)(3) as set forth in *Guess* and *Capco*.

**{12}** On appeal, Fannie Mae implicitly acknowledges what JPMorgan did not—that *Kinder Morgan*'s adoption of the *Pioneer* factors as the standard for determining excusable neglect under Rule 1-060(B)(1), a decidedly "liberal" standard, does not extend to Rule 12-201(E)(3). *See Kinder Morgan*, 2009-NMCA-019, ¶ 10 (stating that "under Rule 1-060(B)(1) it is for the district court . . . to determine what is a good excuse, and that the district court should be liberal in that determination" (internal quotation marks and citation omitted)); *cf. Capco*, 2007-NMCA-011, ¶ 27 (contrasting *Guess*'s holding that the rule governing extensions to file a notice of appeal "should be strictly construed" with the rule from *Roderiguez* that district courts should apply a liberal standard in determining the existence of excusable neglect under Rule 1-060(B)(1) (internal quotation marks and citation omitted)). Fannie Mae nonetheless seeks to avoid *Guess*'s clear pronouncement that Rule 12-201(E)(3) is to be "strictly construed" by arguing that this Court "should recognize that the analysis of the 'excusable neglect' standard in *Pioneer* extends to the 'excusable neglect' standard in Rule 12-201(E)(3)." But under the doctrine of stare decisis, we are not at liberty to deviate from the standard set forth in *Guess* and *Capco. See Alexander v. Delgado*, 1973-NMSC-030, ¶ 9, 84 N.M. 717, 507 P.2d 778 ("The general rule is that a court lower in rank than the court which made the decision invoked as a precedent cannot deviate therefrom and decide contrary to that precedent, irrespective of whether it considers the rule laid down therein as correct or incorrect." (internal quotation marks and citation omitted)); *City of Las Vegas v. Oman*, 1990-NMCA-069, ¶ 35, 110 N.M. 425, 796 P.2d 1121 ("[T]he doctrine of stare decisis presumes that a court will apply the rules of law previously announced by courts of the same jurisdiction to cases involving similar facts.").

**{13}** Likewise, the district court was without authority to adopt or apply a different standard than that already established in our case law. *See Alexander*, 1973-NMSC-030, ¶ 9; *Oman*, 1990-NMCA-069, ¶ 35; *cf. Kinder Morgan*, 2009-NMCA-019, ¶ 10 (explaining that "[w]e currently have no explicit guidance in New Mexico decisions on what constitutes 'excusable neglect' for purposes of granting relief under Rule 1-060(B)(1)" before proceeding, in the first instance, to adopt a standard). To the extent that the district court applied *Kinder Morgan*'s standard for determining excusable neglect in concluding that JPMorgan's failure to timely file its notice of appeal should be excused, it erred in doing so. However, the record indicates that the district court only peripherally considered the *Pioneer* factors and that the principal basis for the district court's conclusion was its belief that excusable neglect was present "just on the face of [Rule 12-201(E)(3)]." We therefore next consider whether the facts and circumstances of this case support the district court's finding that excusable neglect existed.

**B.     JPMorgan's Failure to Timely File Its Notice of Appeal Does Not Amount to Excusable Neglect in Light of *Guess* and *Capco***

{14}     As noted previously, JPMorgan contended that "there was excusable neglect associated with the ability to file a timely notice as [JPMorgan]'s counsel was unable to obtain direction from its client and the investor on the mortgage loan, Fannie Mae, before the . . . deadline." JPMorgan did not elaborate upon what it meant by "unable to obtain direction" other than to assert that there had been "misunderstandings and miscommunication between [JPMorgan]'s counsel and [JPMorgan.]" According to JPMorgan, the "misunderstandings and miscommunication" related to (1) "the effect" of the district court's order denying JPMorgan's motion for reconsideration, (2) "who was responsible for making the decision related to the appeal[,]" and (3) "who would be responsible for prosecuting any appeal[.]" JPMorgan offered neither specific details regarding the purported "misunderstandings and miscommunication" nor evidence to support its ipse dixit assertions that the failure to timely file a notice of appeal indeed resulted from any such misunderstandings and miscommunication. JPMorgan additionally suggested that "discussions related to possible settlement options and the settlement history in the matter" may have contributed to its failure to timely file a notice of appeal but failed to demonstrate how such discussions, assuming they occurred, would serve as a basis for extending JPMorgan's time to file a notice of appeal. Finally, JPMorgan included in its explanation of its failure that "[t]he appeal deadline of September 30, 2016[,] was on a Friday and the parties were all located in different areas of the country, with the management of each party not available." Setting aside that as with all of its other assertions, JPMorgan offered no affidavits or other competent evidence to support this aspect of its explanation, JPMorgan's explanation of the circumstances that existed on the date of the filing deadline fails to explain its failure to file a notice of appeal on any of the preceding twenty-nine days following the district court's entry of a final appealable order.

{15}     JPMorgan's excusable neglect argument is based on facts that are substantially similar to those underlying the excusable neglect argument made in *Capco*, i.e., facts that were rejected by this Court as failing to rise to the level of excusable neglect. Moreover, the circumstances JPMorgan claims amount to excusable neglect are exactly those that the *Guess* Court unequivocally stated "are not sufficient" to warrant an extension. 1980-NMSC-040, ¶ 17 ("Mere failure to receive notice alone, work overload of attorneys, palpable error of counsel and other causes that do not rise to the level of "unique" circumstances that cannot be anticipated or controlled by a party's counsel are not sufficient."). On the record before us, there exists no basis to support an extension of JPMorgan's time for filing a notice of appeal based on excusable neglect under the standard set forth in *Guess* and applied by this Court in *Capco*. JPMorgan provided the district court with nothing more than bald assertions regarding the reasons it failed to timely file a notice of appeal. Critically, it failed to even assert—let alone establish—that the circumstances that caused JPMorgan to be unable to timely file a notice of appeal were unique and could not have been anticipated by counsel, i.e., were excusable. The record evinces that much in the same way JPMorgan failed to prosecute its case, leading to its dismissal in the first instance, JPMorgan simply failed to prosecute its

appeal. JPMorgan then sought a reprieve under Rule 12-201(E)(3) to correct "precisely the kind of delay and waste of judicial resources against which our Rules of Appellate Procedure are designed to protect." *Capco*, 2007-NMCA-011, ¶ 34.

**{16}**    The district court concededly relied "just on the face" of Rule 12-201(E)(3) and failed to apply controlling precedent in determining whether excusable neglect existed to excuse JPMorgan's untimely filing of its notice of appeal. We therefore conclude that the district court abused its discretion in granting JPMorgan's motion for an extension to file its notice of appeal.

**CONCLUSION**

**{17}**    We reverse the district court's order granting JPMorgan an extension of time to file its notice of appeal. Accordingly, we dismiss Fannie Mae's appeal of the district court's dismissal of its foreclosure action with prejudice. We remand to the district court for proceedings consistent with this opinion.

**{18}    IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**MEGAN P. DUFFY, Judge**